CITED *in Wright* v. *Carter*, 3 *Dutch.* 81; *State* v. *Laverack*, 5 *Vr.* 206; *State* v. *Montclair R. R. Co.*, 6 *Vr.* 330; *Hinchman* v. *Pat. Horse R. R. Co.*, 2 *C. E. Gr.* 78; *J. C. & B. R. R. Co.* v. *J. C. & Hoboken Horse R. R. Co.*, 5 *C. E. Gr.* 67; *M. & E. R. R. Co.* v. *Hud. Tun. R. R. Co.*, 10 *C. E. Gr.* 388.

---

EPENETUS W. WALLACE v. SUSAN E. COIL.

1. On an application for a discharge from imprisonment for debt, by a defendant imprisoned on an execution upon a judgment for breach of promise of marriage, it is not competent upon the hearing to show that the jury gave increased damages because the breach of promise was aggravated by seduction. The damages in such action, are not damages for seduction within the meaning of the insolvent acts, and such testimony would contradict the record.

2. A juror may be permitted to prove that in the trial of a former suit in which he was a juror, the jury allowed certain items embraced within the declaration, but not to show that in a suit brought for one cause of action damages were given for another and different cause of action; this would contradict the record.

This was a *certiorari* directed to the court of common pleas of the county of Morris, removing into this court their proceedings in the matter of the application of the plaintiff in *certiorari*, for a discharge from imprisonment for debt as an insolvent debtor. The applicant was imprisoned on an execution issued in an action brought for a breach of pro-

mise of marriage, and for no other cause. Upon the trial of that suit (*Ante p.* 291,) the court had permitted evidence of the seduction of the plaintiff to be given in aggravation of damages. Upon the hearing of the insolvent, the plaintiff in that suit, opposed his discharge, and offered to show by one of the jurors that part of the damages in that action were for the seduction of the plaintiff therein. The court of common pleas admitted the evidence, and refused to discharge the plaintiff in *certiorari*, on the ground that part of the damages for which he was imprisoned were for seduction.

Argued before Justices ELMER and OGDEN, by Mr. *Vanatta* and Mr. *Bradley*, for plaintiff in *certiorari*, and by Mr. *Chandler* and Mr. *J. W. Miller*, for defendant.

The opinion of the court was delivered by

ELMER, J. The prosecutor of this *certiorari* applied to the court of common pleas of the county of Morris, to be discharged from arrest as an insolvent debtor, setting forth in his petition that he had been arrested upon an execution issued out of the supreme court, at the suit of Susan E. Coil, in an action of trespass on the case upon promises, and that he had delivered to the sheriff a bond and inventory, pursuant to the second section of the "act abolishing imprisonment on civil process in certain cases." Upon the day appointed for the hearing, Susan E. Coil appeared by her counsel, and offered to prove that upon the trial of the action in which the judgment was recovered by her, which was an action for breach of promise of marriage, she therein recovered damages for her seduction. This evidence was then rejected, and the petitioner proceeded with his proofs, and was examined upon written interrogatories. During his examination, the counsel of the creditor produced an exemplified copy of the record of the judgment mentioned in the petition, the reading of which was objected to by the petitioner, but permitted by the court, and then the creditor

proposed to inquire of the petitioner, whether damages had not been given against him in that action for the seduction of the said Susan E. Coil, which was objected to, but allowed by the court. At the close of the examination, evidence was offered on behalf of the said creditor, to prove that damages were given in that action for seduction, which was objected to, but was received by the court, who refused the prisoner his discharge.

It is now assigned as a reason for reversing the order of the court of common pleas refusing to discharge the petitioner, that the court erred in going into the inquiry respecting the seduction, before the creditor made the undertaking mentioned in the eighth section of the aforesaid act, such inquiry being proper on the trial before the jury and not before the court. The first section of the supplement of 1854, (*Pam. Acts, p.* 522,) however, expressly enacts, that if upon the hearing before the court or jury, as the case may be, it shall appear to the satisfaction of such court or jury, that the object of such application was to be discharged from arrest or confinement on mesne or final process, for any cause of action or for damages recovered for the seduction of any female, then the said debtor shall not be entitled to his discharge. It is thus made the duty of the court to refuse the discharge, if it appears before the said court that the arrest or confinement was for a cause of action or for damages recovered for seduction. This might appear by the admission of the petitioner in answer to the interrogatories propounded to him, or it might appear by evidence produced for that purpose by any creditor who thought proper to make himself a party to the proceeding. The court is required by the third section of the original insolvent act, (*Rev. Stat.,* 326,) to hear, consider and examine into the truth and justice of the application or petition, and this must of course be done by hearing legal and competent evidence on the part of the petitioner, or of any one or more of the creditors. If upon such examination respecting the truth of the petition, it shall appear that the petitioner will be entitled to his discharge in case the court

and creditor shall be satisfied that his conduct has been fair, upright, and just, he will then be examined upon interrogatories touching the disposition of his estate, &c., pursuant to the fourth section; but if it appears that his petition is not true, or that from any other cause he is not entitled to a discharge, however fair his conduct may have been, such examination would be of no use. In the case of *Hamilton* v. *Chevalier*, 3 *Harr.* 433, it was held that the applicant's own oath may be taken to prove that he was arrested, had given bond, &c., and the judge who delivered the opinion says, that the court, if they see fit, may require additional evidence, or the creditors may controvert his statement. All the preliminary proceedings appearing to be correct, then the petitioner being examined, if it appears to the court from his own statements that his conduct has not been fair, upright and just, it will refuse his discharge on that ground, but if the court is satisfied, then any creditor who is not, and will enter into the undertaking prescribed by the eighth section, may require him to be remanded, and a trial will be had before a jury. In the nature of things, the inquiry whether the petitioner's case came within the prohibition contained in the supplement of 1854 was preliminary to his right to a discharge, and might with great propriety have been gone into before the petitioner was examined, and if not then, was correctly heard and determined by the court at a subsequent period. If the court had not for this cause denied the discharge, and the petitioner had been remanded at the request of a creditor, the same question would have come again before the jury. There was no error then in making this question a subject of inquiry before the court.

The record introduced by the creditor, proved that the action against the petitioner, was an action for breach of promise of marriage, wherein it was found by the jury that the defendant did undertake and promise in manner, &c., and they assessed the damages of the said plaintiff, on occasion of the non-performance of those undertakings and promises, to seven hundred dollars, whereupon judgment was rendered for said damages and costs. The creditor

then produced parol evidence to show that on the trial of that action, the judge permitted evidence to be given to the jury of the seduction of the plaintiff by the defendant, subsequent to the promise of marriage; that the judge charged the jury that the seduction might be considered in aggravation of the damages; and that the jury did, in fact, give a part of the damages assessed for the seduction. This evidence was objected to, and its reception is now assigned as error.

It appears that after the rendering of the verdict mentioned in the record produced, a motion was made in this court for a new trial, among other reasons, because the judge erred in admitting evidence of the seduction. The decision, however, was, that such evidence was properly admitted, and partly on the ground that the action for a breach of contract of marriage, though in form an action on a contract, partakes more, so far as the question of damages is concerned, of the nature of an action for a tort. Upon the strength of this decision it was urged, that if the seduction could legally enter into the estimate of the damages, it brings the case within the purview of the supplement.

That supplement forbids a discharge where the arrest or confinement was "for any cause of action or for damages recovered for the seduction of any female." The phrase, "cause of action," refers to the case of an arrest upon mesne process, and the phrase, "damages recovered," to an arrest after the judgment; but it cannot be doubted that both are meant to apply to a case of arrest for the same cause. Now there is a cause of action, known in legal and in ordinary language as a cause of action for seduction, and that is the action of trespass or trespass on the case, at the suit of the parent or master, for a loss of service occasioned by seduction. No other cause of action is so known, nor are damages recovered for seduction in any other cases. The damages recovered in an action for a breach of contract of marriage may, and ought to be, enhanced by the conduct of the defendant, in taking advantage of the contract to seduce his victim, but such damages are in no just sense,

damages for the seduction. The master or parent may still sue for and recover damages for the seduction, while the female herself cannot sue for or recover a penny for it, however ruinous it may have been to her. Evidence to show that damages, which, on the face of the record, are stated to be for the non-performance of certain undertakings and promises, were, in fact, rendered in whole or in part for some other cause, is evidence directly to contradict the record, which is of itself a strong reason for believing that the legislature had in view only the action for seduction, where the damages, in fact and in law, are expressly given for the seduction. It is true, that in that action, an actual loss of service must be set forth and proved, but the damages for such loss of service are damages for the seduction itself, whereby the loss of service was occasioned.

It was insisted by the counsel of the defendant in this *certiorari*, that the evidence received did not contradict or impugn the record, but was entirely consistent with it, and that this case was like those where evidence is admissible to show what was really the matter in controversy, where that is not apparent from the record itself. 1 *Greenl. Ev.* § 532; 3 *Phil. Ev. C. & H. notes*, 837. But these cases are very different from this, inasmuch as various causes of action may be joined in one declaration; the verdict and judgment will not always show what demands were actually passed upon, and hence if it afterward becomes necessary to prove what the fact was, it must be done by parol evidence. This does not contradict or vary the record, by making it mean something different from what is expressed on its face, but is consistent with its absolute verity; whereas evidence to prove that damages expressly stated on the record to be for one cause, were, in fact, given partly for another cause, is directly to contradict and vary it. The fallacy of the argument consists in treating that which may justly and legally aggravate the damages for a particular cause of action, as being a constituent part of the cause of action itself. In my opinion, neither the record nor the parol evidence admitted in addition to it, were competent to prove that the

petitioner had been arrested for a cause of action or for damages recovered for seduction, and the court erred in receiving them, and in refusing his discharge.

The creditor's counsel were constrained to admit that it was necessary to prove not only that damages might have been given by the jury for seduction, but that in fact such damages were given ; and for this purpose one of the jurors was called, who testified that the jury allowed two hundred dollars for the breach of promise of marriage, and five hundred dollars for the seduction of the plaintiff, by the defendant. This evidence was objected to, and its admission is now insisted on as erroneous.

No case was cited, nor am I aware that one can be found, where a juror was permitted to give evidence in another suit, of the grounds upon which a verdict was rendered, on which a judgment produced of record, was founded. *Stevens* v. *Payne*, 2 *Root* 83, was referred to, but that only decides that a juror may be called to show whether a particular demand was brought in question on the trial, and not that he may be asked whether the jury allowed it. Even upon the question of awarding a new trial, when the court, in the exercise of its supervisory power over the proceedings of juries, will sometimes hear depositions respecting the conduct of the jurors, it is well settled that the affidavits of the jurors themselves will not be received to impeach a verdict, for mistake or error in respect to the merits, or for any irregularity or misconduct of the jury. *Owen* v. *Warburton*, 4 *Bos. & Pul.* 326; *Jackson* v. *Williamson*, 2 *Term R.* 281; *Clum* v. *Smith*, 5 *Hill* 560. In the case of *Sargent*, 5 *Cow.* 106, the affidavits of jurors were admitted with great hesitation, in a peculiar case, to show a misconception of the rule of damages, derived from the charge of the court, taken in connection with the arguments of counsel. This last case goes to the extreme limit, if not beyond the correct rule; but it falls far short of what was allowed in this case. There the evidence was received to guide the discretion of the court, and to enable it to determine whether a verdict ought to be set aside, on the ground that the case had been im-

Wallace v. Coil.

properly presented to the jury; while in this, evidence was received to explain a verdict reduced to form and followed by the judgment of the court. To permit a juror, after a verdict and judgment have been entered of record, to explain what was included therein, would be in direct opposition to the legal idea of a record, which is that it speaks for itself, and cannot be impeached, and would be most dangerous to the rights of the parties, and highly impolitic. The grounds upon which a verdict is founded are often as variant and numerous as the jurors. Each man may be governed by his own distinct motive. The result at which they arrive is alone made public, and that result is entered upon the record in due legal form, and discloses their collective will. To permit an inquiry into the private views of the several individuals, besides the difficulty of ascertaining them, would be to strike a fatal blow at the institution itself. The court is bound to aid and instruct the jury, carefully to guard them from all improper interference, and to see that their verdict is not in opposition to the law applicable to the case, and by so doing exercises a wise and salutary control over their proceedings, of great importance to the safe administration of justice. But to permit them, after they have fulfilled their duties, and pronounced a verdict which has been approved and made the foundation of a solemn judgment, to be individually questioned as to how they arrived at that result, would be to subject them to a scrutiny they could seldom bear, and which could be productive of nothing but evil.

So plain are these principles, that but for the earnestness with which the counsel sought to free this case from their application, and the respect which is due to the court whose proceedings are under review, I should not have thought it necessary to vindicate them so much at large. Much stress was laid upon the argument, that a female who recovers damages for a breach of contract of marriage, accompanied by seduction, comes as fairly within the reason of the supplement of eighteen hundred and fifty-four, and is as much entitled to its protection as the parent or master who re-

covers for a loss of service, occasioned by seduction. This may be true. Every virtuous mind must abhor the seducer and desire his punishment; and I trust it will not be long before he will be made amenable to the law as a criminal. But the question now is, what is the true interpretation of this particular statute? Shall language fairly applicable only to a cause of action well known, and described in treatises on the law as an action for seduction, be extended to another and entirely different cause of action, never known or described as an action for seduction, and in which damages cannot be shown to have been recovered for seduction, except by wholly disregarding the plainest principles of evidence? And shall this be done, too, in a case where the personal liberty of the citizen is involved? I think there can be but one safe answer, and that is in the negative. Without examining the other reasons assigned for reversal, I am clearly of opinion that the proceedings of the court of common pleas in this case were erroneous, and that the order refusing the petitioner's discharge must be set aside, and the record and proceedings remitted to that court, to be proceeded in according to law.